```
                    IN THE UNITED STATES DISTRICT COURT
                       EASTERN DISTRICT OF ARKANSAS
                            WESTERN DIVISION

UNITED STATES OF AMERICA,

        Plaintiff,

   v.                                       No. 4:08-00330-01 BSM

                                            March 3, 2010
                                            Little Rock, Arkansas
                                            9:08 a.m.
DONALD BRATTON, JR.,

        Defendant.
```

**TRANSCRIPT OF SENTENCING**
BEFORE THE HONORABLE BRIAN S. MILLER,
UNITED STATES DISTRICT JUDGE

_____

APPEARANCES:

On Behalf of the Government:

   MR. JOHN RAY WHITE, Assistant U.S. Attorney
      United States Attorney's Office
      425 West Capitol Avenue, Suite 500
      Post Office Box 1229
      Little Rock, Arkansas  72201-1229


On Behalf of the Defendant:

   MR. OMAR F. GREENE, II, Assistant Federal Public Defender
      Federal Public Defenders Office
      1401 West Capitol Avenue, Suite 490
      Little Rock, Arkansas  72201


(Defendant present.)

     Proceedings reported by machine stenography and displayed in realtime; transcript prepared utilizing computer-aided transcription.




                    Judith A. Ammons, RPR, CRR, CCR
                      United States Court Reporter

```
 1                    P R O C E E D I N G S
 2          THE COURT:  Good morning.  This morning we have the
 3   sentencing in the case of United States of America versus
 4   Donald Bratton, Jr.  The case number is 08CR00330.  I can't see
 5   Mr. Bratton.  There he is.  I see Mr. Bratton with his
 6   attorney, Mr. Omar Greene.  And the United States is
 7   represented by John Ray White.  Are we ready to proceed?
 8          MR. GREENE:  Yes, Your Honor.
 9          MR. WHITE:  The government is ready, Your Honor.
10          THE COURT:  Mr. Greene, please bring Mr. Bratton
11   forward.
12       Okay.  Mr. Bratton, I show that we were here in November
13   on November the 9th of 2009, and you were here with Mr. Greene,
14   and you pled guilty to Count 1 of an indictment that charged
15   you with being a felon in possession of a firearm.  And that
16   was in violation of our statute 18 U.S.C. Section 922(g)1.
17   Now, Mr. Bratton, you've been represented by Mr. Greene in this
18   case.  Do you have any complaints with the representation
19   you've received from Mr. Greene?
20          THE DEFENDANT:  No, sir.
21          THE COURT:  If there is anything you want to bring to
22   my attention, now would be the time to do it, if you have any
23   complaints at all.
24          THE DEFENDANT:  No, sir.
25          THE COURT:  Now, Mr. Greene and Mr. Bratton, I have a
```

1    copy of the presentence investigation report that's dated
2    December the 16th of 2009.  And I think, Mr. Bratton, I told
3    you when we were in court last time that probation would come
4    out and do an investigation, would give Mr. Greene a copy of
5    the report, would give a copy to the government, and then you
6    could read it and determine whether all of the facts that are
7    in the report are accurate.  And if you had any objections,
8    that you could bring it to Mr. Greene's attention, or
9    corrections, and then he could file an objection on your
10   behalf.
11         Now, Mr. Greene, I don't see any written objections.  Is
12   there any objection to any of the facts contained in the
13   report?
14              MR. GREENE:  No, Your Honor.
15              THE COURT:  Okay.  And, Mr. White, do you have any
16   objections to the facts?
17              MR. WHITE:  No, Your Honor.
18              THE COURT:  All right.  Seeing there are no objections
19   to the presentence report, I will adopt the facts that are in
20   the report as true.
21         Now, I show, Mr. Bratton, that because you are an armed
22   career criminal, under the statute, the statutory penalty for
23   being a felon in possession of a firearm is not less than 15
24   years, a fine of $250,000, or both.  You could also be
25   sentenced to a term of supervised release of not more than

1   three years.  And I think I explained to you that we have
2   sentencing guidelines in federal court, but they are not
3   mandatory anymore, but I have to start with the sentencing
4   guidelines in determining what your sentence should be because
5   we have a statute, 18 U.S.C. Section 3553(a), that lists the
6   guidelines as the starting point or as a factor that I must
7   consider.
8        Now, I show, with the information I have here, that in
9   Chapter 2 of the guidelines, your base offense level is a 24
10  because you committed the offense after having at least two
11  felony convictions of either a crime of violence or for a
12  controlled substance.  And I show you receive a two-level
13  enhancement for possession of a stolen firearm.  Also, that you
14  receive a four-level enhancement for using the firearm in
15  connection with another felony offense.  And so that brings us
16  to a 30.  And I note that you get a two-level reduction for
17  acceptance of responsibility, which takes us to 28.
18       Now, as I said before, because you're an armed career
19  criminal, under the statute, the Chapter 4 enhancement controls
20  in your case.  And what that means is, although you would
21  normally have an offense level of 28, your base offense level
22  under Chapter 4 of the sentencing guidelines is a 34.  So that
23  means you actually get more points because you're an armed
24  career criminal.  Now -- and that's because you possessed a
25  firearm in connection with a crime of violence, and that was

1    aggravated assault.

2        Now, starting with a 34, if you receive a two-level

3    reduction, which you do, that takes you to a 32.

4        Now, is the government going to request a third point?

5            MR. WHITE:  Please, Your Honor.

6            THE COURT:  All right.  So you get a third point that

7    reduces you to a 31.  Now, I note in looking at your history,

8    Mr. Bratton, that you have a number of previous offenses.  And

9    because of that, you had 25 criminal history points.  And that

10   results in a criminal history category of VI.  Okay.  And

11   because you have 31 criminal history points and that's -- or

12   you have an offense level of 31, and that was the 34 because

13   you're an armed career criminal, minus the three-point

14   reduction that the government authorized, it takes you to a 31.

15   But with your criminal history -- your criminal history, you

16   have a category of VI.  And with 31 -- with a base offense

17   level of 31 and a criminal history category of VI, it shows

18   that your sentencing range by sentencing guidelines is from 188

19   months in prison to 235 months in prison.  So that is the

20   sentencing range that the guidelines gives me.  The guideline

21   range also establishes three to five years of supervised

22   release.  Pursuant to the guidelines, probation is not

23   authorized.  And the guideline range for a fine is from 15,000

24   to $150,000.

25       So, the guidelines, Mr. Bratton, would provide you with

6

Case 4:08-cr-00330-BSM   Document 44-2   Filed 03/23/10   Page 6 of 19

1  188 months in prison to 235.  It would provide you with
2  supervised release upon being released from prison of three
3  years to five years, and a fine of $15,000 to $150,000.
4        Now, Mr. Greene, do you want to make a statement with
5  regard to mitigation?
6           MR. GREENE:  Judge, I was going to call one witness on
7  his behalf.
8           THE COURT:  We can do that.
9           MR. GREENE:  I call Floyd Hancock.
10          THE COURT:  Mr. Hancock, come forward.  Mr. Hancock,
11 let's get you sworn in.
12              **FLOYD HANCOCK, DEFENDANT WITNESS, DULY SWORN**
13          THE COURT:  All right, Mr. Hancock.  Just have a seat.
14                        DIRECT EXAMINATION
15 BY MR. GREENE:
16 Q.   And would you state your name for the Court?
17 A.   Floyd Hancock.
18 Q.   And what's your occupation?
19 A.   I'm the chief investigator with the Federal Defender's
20 Office in Arkansas.
21 Q.   And how long have you been the chief investigator?
22 A.   Since June.
23 Q.   And then before that, what was your job title in our
24 office?
25 A.   I was a senior investigator, supervisor.

Judith A. Ammons, RPR, CRR, CCR
United States Court Reporter

1  Q. And give the judge a little bit of your background.  You
2  have a bachelor's degree in business --
3  A. I do.  I have a bachelor's degree, bachelor of science
4  from John Brown University in business.  I have a couple of
5  associate degrees in law enforcement.  I'm a retired policeman
6  from Springdale.  I had the rank of captain there.  I'm a
7  graduate of the FBI National Academy, and many other law
8  enforcement training.
9  Q. And I think you were actually even acting chief for awhile
10 in Springdale, weren't you?
11 A. For a period of time, yes.
12 Q. For how long?
13 A. Oh, a couple of months.
14 Q. Okay.  And you've been with our office since 1995?
15 A. That's correct.
16 Q. And then didn't you get an award as an investigator, too?
17 A. I did.  I received the investigator of the year award
18 in 2004 for all of the federal defenders.
19 Q. And now -- so you've had a lot of contact with a lot of
20 criminal defendants?
21 A. I have.
22 Q. I think weren't you a detective, too?
23 A. For many years, I was, yes.
24 Q. And I think you even worked one case that was pretty
25 horrible that was where some woman lost custody of her kids and

1   she went home and murdered them?
2   A.   Her entire family, that's correct.
3   Q.   And so what can you tell the Court about Mr. Bratton? We
4   know he has a bad past. What have you seen in him that's
5   positive right now?
6   A.   Since I've met Mr. Bratton, I've seen some -- he's a very
7   positive person. He seems to want to do the right thing. He's
8   sorry -- he appears to be sorry for what he's done. He wants
9   to make things right. He's cooperative with us. He always has
10  a good attitude, a good demeanor. He gets along with us well.
11  Very pleasant to work with, to be honest with you.
12  Q.   And I think he's tried to do some -- like, get some
13  education while he's been in prison this time?
14  A.   He has. He's currently enrolled in a GED program. Being
15  moved around from facility to facility, it's a little difficult
16  for him to keep it going, but he's still working on his GED.
17  He enrolled in the Interchange Faith Initiative Program, a
18  faith-based program which he hasn't been able to complete, but
19  he was in it and it's made a marked difference in his
20  disposition and his attitude, and he's very -- it's very
21  noticeable.
22  Q.   And has his family noticed that in him, too?
23  A.   His family has commented to me that they have noticed a
24  definite change in the way he views life and his attitude.
25          MR. GREENE:  That's all I have.

1           THE COURT:  Any cross-examination, Mr. White?

2           MR. WHITE:  No, thank you, Your Honor.

3           THE COURT:  Mr. Hancock, you can stand down.  Thank

4  you.

5           MR. GREENE:  And, Judge, on his behalf, I would say, I

6  mean, there's nothing he can do about -- he can't wipe away his

7  past, and that's what -- he's having to deal with that now.

8  But he is doing positive things in the present.  And I think --

9  and Mr. White could back me up on this and Agent Littleton,

10  that he has been interviewed by them to -- you know, he's

11  trying to cooperate with them.  I think they still have -- feel

12  like they have a way to go with him.  And we're trying to meet

13  again with Agent Littleton.  And I think -- and Agent

14  Littleton, I think, would back me up on this, that between the

15  time he was arrested and the way he is now, that there has been

16  a marked improvement in him and his attitude and what he's

17  trying to do with himself.  He would ask the Court to put him

18  in the -- if I misspoke for Agent Littleton, I'm sure he'll

19  correct me.

20           THE COURT:  I'm sure he will.

21           MR. GREENE:  Yeah.  And he does -- in federal prison,

22  he's hoping to go to Texarkana because he's heard that there

23  are a lot of educational programs there.  And he wants to get

24  in the drug -- that intensive drug treatment program because

25  his use of drugs, especially meth, have really contributed to

1  him, you know, breaking the law.  And from what I have heard
2  about him, I was expecting some, you know, really antisocial
3  person.  And my impression of him was the same as Mr. Hancock,
4  that he's turned -- that he's turned a corner in his life.  And
5  based on that, we would ask the Court for as much mercy as the
6  Court deems appropriate for him.  Thank you.
7           THE COURT:  Okay.  Let's do this.  Let's identify -- I
8  see that he has family, or would seem to be family or friends
9  in the courtroom.  Let's identify who all we have here on --
10 who are coming to support Mr. Bratton.
11          MR. BRATTON, SR.:  I'm Donald Bratton, his dad.
12          THE COURT:  You are his father?
13          MR. BRATTON, SR.:  Yes.
14          THE COURT:  Who else do we have?
15          MS. MIDDLETON:  Vikki Middleton, his mother.
16          THE COURT:  Ms. Middleton, what's your first name
17 again?
18          MS. MIDDLETON:  Vikki.
19          MR. MIDDLETON:  Joe Middleton, his stepfather.
20          THE COURT:  And that is Joel?
21          MR. MIDDLETON:  Joe Middleton.
22          THE COURT:  Okay.  Any of you have anything you want
23 to say on behalf of Mr. Bratton, or did you just come in here
24 to show support?
25          MS. MIDDLETON:  Just that he's changed a lot.

1          MR. BRATTON, SR.:  He has changed a whole lot.  He's
2    completely turned his life around.  And I wish you would be as
3    lenient on him as you possibly could.
4          THE COURT:  And I guess -- you know, I have family
5    members and friends come to court on -- sometimes I have people
6    here and nobody is here with them.  The times when I have
7    family here, most of the time the families, for the most part,
8    their hearts are broken.  And they hate -- regardless of what
9    the defendant is charged with and what he's done in his past,
10   the family just wants to show that you still love him and you
11   care about him.  Is that right?
12         MR. BRATTON, SR.:  Correct.
13         THE COURT:  Is there anything else you want to add?
14   Okay.  Well, thank you for coming.
15      Now, Mr. Bratton, did you have anything you wanted to say?
16   You're not required to, but if you want to, you can.
17         THE DEFENDANT:  I'm just sorry.  I've done a lot of
18   bad things in my life that's contributed to drug use.  And I
19   need help for that.  I understand that, that I broke the law
20   and I've got to be punished for it.  And I have tried to change
21   my life.  I found the Lord.  And I just ask that you be lenient
22   with me and that you give me a chance.  And maybe if you could
23   get me enrolled in some of them classes, I could help myself.
24         THE COURT:  Okay.  Anything else you want to add?
25         THE DEFENDANT:  No, sir.

1         THE COURT:  Okay.  Well, now, on behalf of the
2    government, Mr. White, do you have anything you would like to
3    present?
4         MR. WHITE:  Your Honor, nothing new, no new witnesses
5    or testimony.  I would just point out to the Court -- and I
6    know the Court has already reviewed the presentence report, but
7    there's a significant amount of factual information regarding
8    the instant offense and the violence towards a family member in
9    this case, that the firearm was stolen, that it wasn't actually
10   recovered at Mr. Bratton's house, but at his mom's,
11   Ms. Middleton's, house.  That there is -- I think that the
12   guidelines appropriately take into consideration the gravity of
13   the particular offense.
14        And while I'm glad to be able to ask the Court to award
15   him the third point for acceptance of responsibility in this
16   case with respect to his criminal history score because he did
17   actually come in and plead guilty without making the United
18   States prepare for trial, it does appear that his criminal
19   history -- I don't know that I would recommend that the Court
20   sentence him to the bottom of the guideline range.  I think
21   somewhere between the bottom and the top, but I'm not going to
22   object to whatever sentence the Court considers appropriate.
23        THE COURT:  Okay.  Mr. Greene, now, question, do you
24   have any argument to make with regard to 3553(a) factors?  Is
25   there anything that makes this case any different than any of

1    the other cases that I would hear?  I mean, you've already
2    presented the argument about what he's done since pleading
3    guilty and all of that and where you think his life is going to
4    go.  But do you have anything to present me that would make
5    this case any different than those others that I would hear?
6            MR. GREENE:  I would point to his age, which, when the
7    guidelines were mandatory, that wasn't a favored factor, but
8    that it can be brought up now.  And I know that in many, you
9    know, appellate cases, they mention that as you get older, you
10   tend to wise up and quit, you know, committing crimes.  And I
11   think -- my impression of him is that he's just tired, you
12   know, that -- tired of living that way and tired of being
13   addicted to drugs, and that he's not just saying these things
14   that he said to the Court, that he is sincere and that he's
15   sincerely sorry.
16        And we did have one other request, and it was if -- he's
17   doing time right now in the Arkansas Department of Correction.
18   And I think he doesn't come up for parole -- he won't parole to
19   his federal sentence for, like, two years.
20           THE DEFENDANT:  Yes, sir.
21           MR. GREENE:  And we would ask the Court to run this
22   sentence concurrent with that one.
23           THE COURT:  Okay.  Any response, Mr. White?
24           MR. WHITE:  Your Honor, I won't object to however the
25   Court considers appropriate in that.

1  THE COURT: Okay. All right. I always do this,
2  Mr. Bratton, before I sentence when I have a case where we have
3  significant criminal history. I always just put it in the
4  record. And I know that this is in the record because the
5  report is, but my records show, Mr. Bratton, that at the age of
6  19 in 1997, February 13, 1997, you were charged with battery in
7  the first degree in Saline County, and you pled guilty and got
8  120 months in prison, which is ten years. And in that case, it
9  shows that you shot the victim several times. And the reason
10 given in that case was that he had raped your girlfriend or a
11 lady you knew, I guess --
12       THE DEFENDANT: My girlfriend.
13       THE COURT: What's that?
14       THE DEFENDANT: My fiancee at the time, yes, sir.
15       THE COURT: And you were released in 2006. That's
16 what it says, but -- okay, because your parole was revoked
17 in 2003.
18    In 1998 at the age of 20, you were charged with battery in
19 the third degree, contempt of court, and that's in municipal
20 court of Little Rock. And you found -- you were found guilty.
21 And in -- that was in March -- no, that was in April.
22    Then in June of the same year, June the 24th of '98, you
23 were charged with delivery of methamphetamine. You pled guilty
24 and received five years in prison.
25    In August of that year, just two months later, you were

1  charged with theft by receiving, and you pled guilty and
2  received five more years.
3          THE DEFENDANT:  That was from -- all stemmed from the
4  same arrest, sir.
5          THE COURT:  I understand.  In March of 2003 at the age
6  of 25, DWI.  Okay.  That is what it is.
7      In August of 2003, five months after that, you were
8  charged with battery in the third degree.  And battery in the
9  third degree is a misdemeanor, but it's still battery.
10     In October of 2003, you were charged with simultaneous
11 possession of drugs and firearms, possession with intent to
12 deliver methamphetamine, and for being a felon in possession of
13 a firearm, which is what you're charged with here.  You pled
14 guilty to all counts.
15     In July of 2007, I think that's the 31st, you were charged
16 with domestic battery, second degree, possession of Xanax with
17 intent to deliver.  You pled guilty to both counts, and you
18 received 216 months to run concurrently.
19     A year later -- or six months later, in February of 2008,
20 you were -- you again were charged with domestic battery,
21 aggravated assault on a family member.  You pled guilty to
22 both.
23     In the same -- I guess this is probably stemming from the
24 same incident because on the same day, you pled guilty to theft
25 by receiving and received 216 months.

1         In February of 2008, I guess that's the same time again,
2    you were charged with theft by receiving.  You pled guilty and
3    received 216 months.
4         Now, that is your criminal history before this case.  Now,
5    as part of what I do, not only do I look at corrections as a
6    way to rehabilitate the person so the person can learn
7    something and hopefully come out and be productive in society,
8    but part of what I do, Mr. Bratton, is punish people.
9              THE DEFENDANT:  I understand that.
10             THE COURT:  And they kind of go together.  In cases
11   where I don't have a significant criminal history, I lean
12   further towards correction -- I mean, towards rehabilitation.
13   In cases where I have significant criminal history, I start
14   moving down towards punishment.  Now, as Mr. Greene knows,
15   there are cases where I won't even look at the guidelines --
16   well, I look at the guidelines, take them into consideration,
17   but I will give people the maximum I can give them to punish
18   them.
19        I will say, I will credit the testimony of Mr. Hancock in
20   this case.  I respect Mr. Hancock and I believe his testimony.
21   So I'm not going to go outside the guidelines in this case.  I
22   believe that Mr. White's position that this is at least a
23   middle to high guideline case -- I think that's accurate just
24   based on the information I have in front of me.
25        Now, that being the case, your guideline range is from 188

1  to 235 months.  I'm not going to give you the maximum of the
2  guideline.  Like I say, I'll credit Mr. Hancock's testimony and
3  the case that was put on today, but I'm not going to give you
4  the low end either.  I'm going to give you right in the middle,
5  which is 211 months.  I haven't calculated out how many years
6  that is, but it's right in the middle of the guideline range.
7  And I know how state court sentences work.  You know, you get
8  15 years, you might do two or three.  I just know how that
9  works.  I was a state court prosecutor.  So I'm going to run
10 this sentence consecutive to your state court sentence.
11      Now, I am going to order -- I'm going to recommend that
12 you participate in anger management courses while you're -- and
13 substance abuse treatment, and educational and vocational
14 programs while you're incarcerated.  I'm going to give you a
15 term of supervised release for a term of five years with the
16 following special conditions:  That you participate under the
17 guidance and supervision of the probation officer in a
18 substance abuse treatment program.  And that might include
19 testing, outpatient counseling, and residential treatment.
20 That you'll abstain from the use of alcohol while you're being
21 treated.  That you'll cooperate in the collection of DNA.  That
22 you'll participate in mental health counseling with emphasis on
23 anger management.
24      I'm also going to make the recommendation that you are
25 incarcerated in the -- down in Texarkana since that's what

1  you've asked for.  And also I'm not going to impose a fine on
2  you because I don't believe that when you get out of prison the
3  best thing for you is to have to pay a bunch of fines.  And I
4  don't know that you would be able to pay it even if I gave you
5  a reasonable payment plan.  I do -- I am going to impose a
6  special assessment of $100 because that's mandatory.
7       Now, is there anything else that we need to take up?
8           MR. GREENE:  No, Your Honor.
9           MR. WHITE:  Your Honor, if the Court would order that
10 the firearm involved in this case -- I believe it was a stolen
11 firearm, that it be returned to the actual owner or destroyed
12 if that person is unable to be located.
13          THE COURT:  We will include that in the order.
14      Make a note of that, Ms. Tyree, so we can put that in the
15 order.
16      Now, Mr. Bratton, one thing about our system is you don't
17 have to agree with what I do.  And you can -- in fact, you have
18 an absolute right to disagree with my sentence.  So you have
19 ten days in which to file an appeal.  Now, you can either --
20 your lawyer can either file it, or, if you don't have counsel,
21 you can go into the clerk's office.  And I know it's very
22 difficult for you since you're incarcerated, but technically
23 that's what you can do.  And they'll help you file an appeal.
24 Also, if you can't afford the filing fee, you can ask for leave
25 to appeal in forma pauperis, which means you fill out an oath

1  saying that you can't afford it, they look into your records,
2  and make a determination whether you can afford it.  And if you
3  can't, that fee can either be waived, or, in some occasions
4  they'll let you pay it on a payment plan, to pay the filing
5  fee.  Also, if you can't afford to represent yourself on
6  appeal, we'll appoint somebody to represent you on your appeal.
7  And the main thing is that just know that you have to file that
8  appeal within ten days.  Do you understand that?
9           THE DEFENDANT:  Yes, sir.
10          THE COURT:  Okay.  Now, is there anything else we need
11 to take up?
12          MR. WHITE:  Not from the government, Your Honor.
13          THE COURT:  Okay.  Well, we will recess, and I guess
14 we'll start our other case at 10 o'clock.
15     (Proceedings concluded at 9:36 a.m.)
16                  C E R T I F I C A T E
17    I, Judith A. Ammons, Official Court Reporter, do hereby
18 certify that the foregoing is a true and correct transcript of
19 proceedings in the above-entitled case.
20
21
22
23 /s/  Judith A. Ammons, RPR, CRR, CCR    Date: March 15, 2010
        United States Court Reporter
24
25


                    Judith A. Ammons, RPR, CRR, CCR
                      United States Court Reporter