1       IN THE UNITED STATES DISTRICT COURT
                EASTERN DISTRICT OF ARKANSAS
2                    WESTERN DIVISION

3    UNITED STATES OF AMERICA,

4          Plaintiff,

5     v.                              No. 4:08-00330-01 BSM

6                                     November 9, 2009
                                      Little Rock, Arkansas
7                                     9:38 a.m.
     DONALD BRATTON, JR.,

8          Defendant.

9

10              **TRANSCRIPT OF CHANGE OF PLEA**
              BEFORE THE HONORABLE BRIAN S. MILLER,
11                UNITED STATES DISTRICT JUDGE

12              _____

13   APPEARANCES:

14   On Behalf of the Government:

15       MR. JOHN RAY WHITE, Assistant U.S. Attorney
           United States Attorney's Office
16         425 West Capitol Avenue, Suite 500
           Post Office Box 1229
17         Little Rock, Arkansas  72201-1229

18

19   On Behalf of the Defendant:

20       MR. OMAR F. GREENE, II, Assistant Federal Public Defender
           Federal Public Defenders Office
21         1401 West Capitol Avenue, Suite 490
           Little Rock, Arkansas  72201

22

23   (Defendant present.)

24       Proceedings reported by machine stenography and displayed
     in realtime; transcript prepared utilizing computer-aided
25   transcription.


                 Judith A. Ammons, RPR, CRR, CCR
                   United States Court Reporter

1                    P R O C E E D I N G S

2            MR. GREENE:  Good morning, Your Honor.

3            THE COURT:  Good morning.  The only case we have on

4    the docket this morning -- we have a few more this afternoon,

5    but this morning all we have is United States of America versus

6    Donald Bratton.  And the case number is 08CR00330.  I see that

7    Mr. Bratton is in the courtroom with Mr. Greene.  Mr. Greene,

8    are you ready?

9            MR. GREENE:  Yes, sir.

10           THE COURT:  Okay.  And the government is represented

11   by John Ray White.  Is the government ready?

12           MR. WHITE:  Yes, Your Honor.

13           THE COURT:  All right.  Mr. Greene, bring your client

14   forward.

15           MR. GREENE:  Thank you.

16           THE COURT:  Mr. Bratton, let me get you to raise your

17   right hand so we can get you sworn in.

18            **DONALD BRATTON, JR., DEFENDANT, DULY SWORN**

19           THE COURT:  Mr. Bratton, before we get started, I

20   would like to get some background information from you.  First,

21   how old are you?

22           THE DEFENDANT:  I'm 31.

23           THE COURT:  31.  And how much education do you have?

24           THE DEFENDANT:  7th grade.

25           THE COURT:  And where did you go to school?

1          THE DEFENDANT:  Cloverdale Junior High School.

2    Cloverdale Junior High School.

3          THE COURT:  Cloverdale.  And I know that you are

4    incarcerated right now, but have you had any medication, any

5    alcohol, any type of drug at all that would make it difficult

6    for you to understand what we're doing today?

7          THE DEFENDANT:  No, sir.

8          THE COURT:  Do you understand why you're in court this

9    morning?

10          THE DEFENDANT:  Yes, sir.

11          THE COURT:  Mr. Greene, have you had a chance to talk

12    to Mr. Bratton this morning?

13          MR. GREENE:  Yes, Your Honor.

14          THE COURT:  Do you know of any reason why we should

15    not go forward with the plea?

16          MR. GREENE:  No, Your Honor.

17          THE COURT:  I find that the defendant is competent to

18    go forward with the plea.  Now, Mr. Bratton, have you -- do you

19    have any problems or any concerns you want to bring to my

20    attention with regard to the legal representation you've

21    received from Mr. Greene?

22          THE DEFENDANT:  No, sir.

23          THE COURT:  Are you satisfied with him?

24          THE DEFENDANT:  Yes, sir.

25          THE COURT:  All right.  Now, Mr. Bratton, I understand

1    that you want to withdraw your plea of not guilty and enter a

2    plea of guilty to Count 1 of the indictment in this case; is

3    that right?

4                THE DEFENDANT:  Yes, sir.

5                THE COURT:  Okay.  Now, as you know, this case comes

6    to me by way of an indictment.  And it's a two-count indictment

7    that was entered on September the 3rd, 2008.  In that

8    Mr. Bratton is pleading only to Count 1, Mr. Greene, do you

9    have any objection to me only reading Count 1 and not reading

10   Count 2?

11               MR. GREENE:  That's fine. Thank you.

12               THE COURT:  And, Mr. White, do you have any objection

13   to me reading only Count 1?

14               MR. WHITE:  No, Your Honor.

15               THE COURT:  Mr. Bratton, Count 1 reads as follows:

16   "The grand jury charges Count 1A, that prior to

17   February 1, 2008, in the Eastern District of Arkansas, the

18   defendant, Donald Bratton, Jr., had previously been convicted

19   as follows:  1, in Pulaski County Circuit Court, of delivery of

20   methamphetamine, in criminal case 1998-3159.  2, in Pulaski

21   County Circuit Court, of theft by receiving, two counts, in

22   criminal case 1999-392; and, 3, in Pulaski County Circuit

23   Court, of simultaneous possession of drugs and firearms, of

24   possession of drugs with intent to deliver, and of being a

25   felon in possession of a firearm, in criminal case 2003-4520.

1  B, that each of the crimes set forth in Paragraph A above was

2  punishable by a term of imprisonment exceeding one year.  C,

3  that on or about February 4, 2008, in the Eastern District of

4  Arkansas, Donald Bratton, Jr., did knowingly possess at least

5  one firearm and ammunition that had been transported in

6  interstate commerce, to wit, a Colt .45 caliber pistol bearing

7  serial number USMA 05059, thereby violating Title 18, United

8  States Code, Sections 922(g)(1)."

9      Now, Mr. Bratton, have you had an opportunity to discuss

10  with Mr. Greene your rights and the consequences of pleading

11  guilty to this count?

12         THE DEFENDANT:  Yes, sir.

13         THE COURT:  Okay.  And I know Mr. Greene, so I know

14  that he's gone over it thoroughly with you.  But, as you know,

15  for the record, I have to go through your rights with you just

16  so you understand and so I understand that you know what your

17  rights are.  Okay?

18         THE DEFENDANT:  Yes, sir.

19         THE COURT:  All right.  You have a right to plead not

20  guilty to the offense charged against you.  And you have a

21  right, Mr. Bratton, to persist in that plea.  If you plead not

22  guilty, you would have a right to a speedy and public jury

23  trial and to be represented by counsel.  If you couldn't afford

24  a lawyer, I'd appoint a lawyer to represent you.  You would

25  also enter the courtroom with the presumption of innocence, and

1    the government would have to prove your guilt beyond a

2    reasonable doubt.  If you and the government both agreed to

3    give up your right to a jury trial, you could have your case

4    tried directly to the Court.  And all that means is that you

5    wouldn't have a jury, but I would be the one who would decide

6    your guilt and innocence and then determine, if you were found

7    guilty, what your sentence would be.  You would have a right to

8    have witnesses subpoenaed and compelled to testify on your

9    behalf.  You would also have a right to confront and

10   cross-examine any witnesses in your case.  You would have the

11   right to not incriminate yourself.  And all that means is

12   nobody could force you to come and sit up on this witness stand

13   and testify.  But you would have a right to say:  I don't want

14   to testify, and that couldn't be held against you.  The

15   government would have to prove its case beyond a reasonable

16   doubt against you without your participation, if you understand

17   what I'm saying.

18              THE DEFENDANT:  Yes, sir.

19              THE COURT:  Okay.  But, now, you could testify in your

20   own case if you wanted to.  That's your decision.  And you

21   would make that decision with the advice and consent of

22   Mr. Greene.

23       Now, you would have a right -- if you were found guilty --

24   if you went to trial and were found guilty, you would have a

25   right to appeal your conviction.  You would also have a right

Judith A. Ammons, RPR, CRR, CCR
United States Court Reporter

1    to appeal whatever sentence you would receive.  Now, do you

2    understand that by pleading guilty, you give up these rights?

3         THE DEFENDANT:  Yes, sir.

4         THE COURT:  And do you understand that by pleading

5    guilty, you won't have a trial, but I will enter a judgment of

6    guilt based on the plea you enter here today?

7         THE DEFENDANT:  Yes, sir.

8         THE COURT:  Do you understand that by pleading

9    guilty -- I understand that you have -- from reading the

10   indictment, you already have been convicted of felonies in the

11   past.

12        THE DEFENDANT:  Yes.

13        THE COURT:  So as far as the right to vote, the right

14   to hold public office, and to own a firearm, you have already

15   given up those rights.

16        THE DEFENDANT:  Yes, sir.

17        THE COURT:  So this case wouldn't affect you in that

18   sense.

19      Have you had a chance to speak with Mr. Greene about the

20   possible sentence you could receive?

21        THE DEFENDANT:  Yes, sir.

22        THE COURT:  Okay.  Now, my information here states

23   that, okay, if you were not -- if you did not have three prior

24   convictions for violent felonies, my information shows that the

25   statutory penalty for this offense would be -- for a felon in

1    possession of a firearm would be not more than ten years in

2    prison, a fine of $250,000, or both.  And you would be

3    sentenced to a term of supervised release of not more than

4    three years.

5         Now, having three prior felony offenses, that creates a

6    little different situation, Mr. Bratton.  The information I

7    have here shows that for someone who has three prior felony

8    offenses, the statutory penalty for a felon in possession of a

9    firearm or ammunition is not less than 15 years in prison.

10        Now, if you violate the terms of your supervised release,

11   I can revoke supervised release and sentence you to additional

12   time in prison.  You'll also have to pay a special assessment

13   of $100.  I could also order you to make restitution if there

14   were any victims, but I don't see anything that indicates that

15   there are.

16        Are you aware of those penalties, Mr. Bratton?

17             THE DEFENDANT:  Yes, sir.

18             THE COURT:  Okay.  Now, have you discussed the

19   sentencing guidelines with Mr. Greene?

20             THE DEFENDANT:  Yes, sir, I have.

21             THE COURT:  Okay.  Now, I note from the indictment

22   that your prior felony offenses, it seems as though they were

23   all in state court.  In federal court, Mr. Bratton, under the

24   sentencing guidelines, there are guidelines to determine what

25   the appropriate sentence should be in any case.  And although

1    they are no longer mandatory, I have to look at them when --

2    and consider them in determining what your sentence will be.

3    And at this time, I can't tell you exactly what your guideline

4    range is.  But what will happen is the probation office will

5    come out and do a probation or presentence report.  They'll

6    interview you, look at your background, criminal history and

7    all of those types of things.  Then they'll complete a

8    presentence report.  That report will be issued to you and to

9    the government.  What you have to do is look at it and make

10   sure that the facts that are set forth in that report are

11   accurate.  If you find anything in that report that you don't

12   agree with, you bring it to Mr. Greene's attention, he will

13   file objections on your behalf, we'll take those up.

14        Now, in that report, the probation office will determine

15   what your guideline range is, the minimum and the maximum

16   according to the guidelines.  Now, do you understand that even

17   when probation determines what your guideline range is, I'm not

18   required to follow that guideline range?

19             THE DEFENDANT:  Yes, sir.

20             THE COURT:  And that's why I tell you that they are no

21   longer mandatory.  They are only a guide.  But I can determine

22   whether to give you a higher, or lower sentence as long as

23   it's -- it complies with that statutory sentence that I told

24   you about earlier.

25             THE DEFENDANT:  Yes, sir.

Judith A. Ammons, RPR, CRR, CCR
United States Court Reporter

1      THE COURT:  Okay.  Now, you understand that if

2  probation came back and they said your guideline range is

3  higher, or if I determine to give you a higher sentence than

4  what the guideline range was, you can't come back in here and

5  withdraw your plea of guilty?  That once you enter your plea of

6  guilty, it's a done deal?

7      THE DEFENDANT:  Yes, sir.

8      THE COURT:  Do you understand that in federal court,

9  parole has been abolished?  So essentially, in federal court,

10  the time that you get or you're sentenced to is pretty much

11  what you do?

12      THE DEFENDANT:  Yes, sir.

13      THE COURT:  Okay.  Now, I understand, Mr. Greene, that

14  there is a plea agreement in this case.

15      MR. GREENE:  Yes, sir.

16      THE COURT:  Would you just tell me basically or

17  generally what the terms of that agreement is or are?

18      MR. GREENE:  Yes, Your Honor, that Mr. Bratton would

19  plead to Count 1, the felon in possession of a firearm, and

20  then that the government would drop the second count; and that

21  he would get, you know, acceptance of responsibility.  And then

22  we're also hoping that there's some other things he could do to

23  help himself in the case.  And then further, we did make some

24  changes the way -- the gist of it is that the way it was

25  written, it was -- we were just conceding that he was an armed

1    career criminal.  And I talked to Mr. White today and he

2    graciously agreed to modify it so that we're not just conceding

3    that right off the bat.  In fact, he's wanted to plead for a

4    long time, and I've really been anxious about the effects of it

5    on him.  And, you know, we studied his background, criminal

6    history.  So I'm the one that's kind of dragged things out, not

7    Mr. Bratton.  From day one, he wanted to plead guilty.

8         THE COURT:  Let me ask this question as something I

9    probably shouldn't ask in open court.  I was noticing that --

10   or I was informed that that was the discussion that went on

11   before I came out --

12        MR. GREENE:  Yes, sir.

13        THE COURT:  -- about removing the agreement to being

14   an armed career criminal or taking it and removing it from the

15   plea agreement.  Also listed in the addendum there is

16   discussion about substantial assistance and some of those

17   things.  And if we don't want to talk about it in open court,

18   that's fine, we don't have to.  And this is something I've

19   never had -- this issue -- since I've been on the bench.  So

20   before I go research it, I would rather see if the lawyers know

21   offhand.  If he admitted to being an armed career criminal, how

22   would that affect whatever request the government can make

23   later with regard to substantial assistance?  Does it affect

24   that at all?  Say, if the government came and said he gave

25   substantial assistance in another case, could I reduce the

1    sentence below 15 years?

2         MR. GREENE:  Yes, sir.

3         THE COURT:  Even if he agreed that he was an armed

4    career criminal?  Or do you have to take that off the table

5    just so there's even any request by the government?  I'm not

6    saying you're going to make that, Mr. White.  I'm just asking

7    for my own benefit.

8         MR. WHITE:  Judge, I can't cite the Court to the

9    statute right now.  It's -- you know, just kind of historical

10   belief, it's my belief, and I've done this in the past, that

11   there's a provision in the law dealing with substantial

12   assistance that kind of removes the mandatory minimum barrier.

13   So if the defendant was sentenced under -- if, under the

14   guidelines, he got 20 years, and he provides substantial

15   assistance, and the United States asked the Court and the Court

16   thought it was appropriate to give him a 50 percent discount,

17   the Court could then give him a reduction to ten years even

18   though that's below the mandatory minimum of 15.

19        THE COURT:  Okay.  That's something I haven't seen

20   since I've been here.  And before I go and start looking for

21   it, I wanted to come out and ask the lawyers.  And if you could

22   give me a quick answer, that makes it easier for me.  Okay.

23   Thank you.

24       That's -- Mr. Bratton, I'm sitting here getting schooled

25   by your lawyer and the government.  And I know you don't feel

1    good about me asking them legal questions, but it helps me out

2    in understanding what your case is all about.

3              THE DEFENDANT:  I understand.

4              THE COURT:  Okay.  Now, Mr. White, did you have

5    anything to add to the statement that was given by Mr. Greene

6    referring to the plea agreement?

7              MR. WHITE:  No, Your Honor.  Well, yes, there are a

8    couple of things.  The felonies that are listed in the

9    indictment are -- I don't believe are all of the felonies that

10   Mr. Bratton has been convicted of.  I didn't know about those

11   when I originally drafted the indictment.  So I anticipate that

12   there -- that there will be other felony convictions that the

13   Court considers at the sentencing that we have.

14      I just wanted the Court to know that at the time we came

15   in and made the modifications to the plea agreement that we did

16   before court, that was in anticipation of allowing the

17   defendant to argue to the Court at sentencing that those either

18   crimes of violence or drug trafficking crimes, which are the

19   two that are predicates to 924(e), that he doesn't have those.

20   But we're not agreeing that he's not a career criminal.  It's

21   just something the Court -- we'll ask the Court to decide or

22   the defendant will at the time that he's sentenced.  And if he

23   does, I know the Court told him that his mandatory minimum was

24   15, but he's acknowledged in his plea agreement that the

25   maximum amount of sentence could be life imprisonment,

1    depending on the Court's discretion and the guidelines.

2            THE COURT:  Okay.  And, Mr. Bratton, did you hear the

3    statement of the U.S. Attorney?

4            THE DEFENDANT:  Yes, sir.

5            THE COURT:  I gave you what your minimum, if you were

6    found being an armed career criminal, and that determination

7    has not been made yet, but if you were determined to be an

8    armed career criminal for this offense, the minimum would be

9    15.  And do you understand that the government is -- I guess

10   wanted me to make sure that you're on notice that it can go as

11   much as life depending on the number of felony violations you

12   have?  Do you understand that?

13           THE DEFENDANT:  Yes, sir.

14           THE COURT:  Okay.  Mr. Greene, is there anything you

15   want to add before we proceed?

16           MR. GREENE:  No, Your Honor, or I'd be getting into

17   arguing sentencing stuff --

18           THE COURT:  I understand.

19           MR. GREENE:  -- which I'd like to do for him right

20   now.

21           THE COURT:  No, no.  This isn't an appropriate place

22   to argue sentencing.

23       Now, Mr. Bratton, do you understand that the plea

24   agreement that you just heard -- first, is that what you

25   understood your plea agreement would be?

1              THE DEFENDANT:  Yes, sir.

2              THE COURT:  And you understand that your plea

3    agreement is essentially just a negotiation between you and

4    your lawyer and the government, but I'm not even bound by it?

5              THE DEFENDANT:  Yes, sir.

6              THE COURT:  Okay.  It's the agreement they want to

7    present to me and say these are the parameters we want to deal

8    in, but I'm not really obligated to follow?

9              THE DEFENDANT:  Yes, sir.

10              THE COURT:  Okay.

11              THE DEFENDANT:  I understand.

12              THE COURT:  And you understand if I were to impose a

13    sentence that was longer than what's anticipated by the plea

14    agreement, or that's longer than what you thought I would give,

15    you can't come back in and withdraw your plea?

16              THE DEFENDANT:  Yes, sir.

17              THE COURT:  Okay.  Now, I tell you all of this -- you

18    may wonder why I keep asking you about all of these same

19    things.  Because I wouldn't want you to come in here and plead

20    guilty because you figured out or you think you know what I'm

21    going to do.  You have to enter a plea of guilty based on just

22    essentially you wanted to come here and do it.  You can't make

23    it based on anything else or based on what you feel like I'm

24    going to do.  Do you understand that?

25              THE DEFENDANT:  Yes, sir.

1          THE COURT:  Okay.  Now, having discussed all of your

2    rights with you, Mr. Bratton, do you still want to plead

3    guilty?

4          THE DEFENDANT:  Yes, sir.

5          THE COURT:  Okay.  Have any threats been made against

6    you to get you to plead guilty?

7          THE DEFENDANT:  No, sir.

8          THE COURT:  Has anybody promised you anything to get

9    you to plead guilty?

10          THE DEFENDANT:  No, sir.

11          THE COURT:  Are you doing it because it's what you

12    want to do?

13          THE DEFENDANT:  Yes, sir.

14          THE COURT:  Mr. White, would you just briefly state

15    what evidence you would put on if we were to have a trial?

16          MR. WHITE:  Yes, Your Honor.  On February the 12th of

17    last year, 2008, a lady named Christina Montoya went to the

18    Little Rock Police Department and reported to a detective there

19    that she had some relationship to the defendant, that eight or

20    10 days prior, she had been at the defendant's house, I think

21    they were sharing the house at the time, that essentially he

22    got mad at her during a party.  At one point, he had a pistol.

23    Turns out to be the pistol that's named in the indictment.

24    That he shot it off in the house.  That following that, there

25    was an altercation between them.  And so that had happened

1        eight or 10 days before the 12th.  There was some investigation

2        by the Little Rock Police Department that followed that.

3             They went and obtained a search warrant for the house

4        where Ms. Montoya said this had happened.  And they did not

5        find the gun.  But during a search warrant at the defendant's

6        mom's house, they did find that gun.  She told the officers

7        that one of the defendant's friends had brought that gun to her

8        house.  The pistol that's described in the indictment had been

9        shown to more than two witnesses who were at the party that

10       night and they identified it as being the firearm that the

11       defendant possessed then.  The gun has been examined by a

12       special agent with the ATF who determined it did function as

13       designed.  It was not manufactured in Arkansas, and, therefore,

14       traveled in interstate commerce.  And the defendant has been

15       convicted of each of the felonies that's described in the

16       indictment.

17             THE COURT:  Okay.  Mr. Bratton, did you listen to what

18       the U.S. Attorney said?

19             THE DEFENDANT:  Yes, sir.

20             THE COURT:  And are his statements true?

21             THE DEFENDANT:  Yes, sir.

22             THE COURT:  Do you understand the nature of the charge

23       against you and the maximum penalty, Mr. Bratton?

24             THE DEFENDANT:  Yes, sir, I do.

25             THE COURT:  How do you plead to that charge?

1           THE DEFENDANT:  Guilty.

2           THE COURT:  Did you, in fact, commit the offense as

3    charged in Count 1 of the indictment?

4           THE DEFENDANT:  Yes, sir.

5           THE COURT:  Okay.  Mr. Greene, do you know of any

6    reason why I should not accept Mr. Bratton's guilty plea?

7           MR. GREENE:  No, Your Honor.

8           THE COURT:  Well, I find the offense was committed as

9    charged in Count 1 of the indictment, and the defendant Donald

10   Bratton, Jr., committed the crime.  I also find that Mr.

11   Bratton is entering his plea of guilty voluntarily with full

12   knowledge of the facts, his rights and the possible

13   consequences.  And for those reasons, the plea is accepted.

14      Now, we don't have an issue of -- we don't have an issue

15   of bond or anything in this case because I think Mr. Bratton is

16   incarcerated.

17      Is there anything else to come before the Court now?

18           MR. WHITE:  Your Honor, just one other motion.  The

19   Court, having accepted defendant's plea of guilty to Count 1, I

20   would ask the Court to dismiss Count 2.

21           THE COURT:  Any objection, Mr. Greene?

22           MR. GREENE:  No, Your Honor.

23           THE COURT:  The motion is well-taken, and Count 2 of

24   the indictment is dismissed.

25      Mr. Bratton, as I told you earlier, what will happen now

1   is a presentence report will be prepared.  The probation office

2   will come out and interview you and do what it has to do and

3   then we'll set your sentencing at that point.

4        Is there anything else to come before the Court today?

5        MR. GREENE:  Judge, I would just like to thank you for

6   being patient with us, we had these last minute negotiations,

7   and also for explaining things to him so well because it is a

8   scary thing to do to come in here and plead guilty to a felon

9   in possession of a firearm when you can be an armed career

10  criminal.  And I know this has probably helped him understand,

11  and we appreciate it.

12       THE COURT:  Okay.  Well, I think our next hearing is

13  at 12:30, so we'll be in recess until 12:30.

14       MR. GREENE:  Thank you.

15    (Proceedings concluded at 10:01 a.m.)

16              C E R T I F I C A T E

17    I, Judith A. Ammons, Official Court Reporter, do hereby

18  certify that the foregoing is a true and correct transcript of

19  proceedings in the above-entitled case.

20

21

22

23  /s/  Judith A. Ammons, RPR, CRR, CCR    Date: March 15, 2010
         United States Court Reporter

24

25

            Judith A. Ammons, RPR, CRR, CCR
            United States Court Reporter